UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 08-11-P-S |
| | ) | |
| RANNIK WILLIAMS DENT | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

NOW COMES the United States of America, by and through its attorneys, Paula D. Silsby, United States Attorney for the District of Maine and Michael J. Conley, Assistant United States Attorney and respectfully submits this sentencing memorandum.

**I.     BACKGROUND**

Rannik Williams Dent (hereinafter "defendant") was charged via indictment with distribution of cocaine base, as well as conspiracy to distribute and possess with intent to distribute cocaine base, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket Entry No. 17. On December 23, 2008, the defendant entered pleas of guilty pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Docket Entry No. 151. A sentencing hearing is scheduled to be held before Judge D. Brock Hornby on April 13, 2009. Docket Entry No. 159.

The parties expect that the Court will need to resolve two outstanding contested issues at that sentencing hearing: whether the defendant should receive a two-level enhancement for a leadership role pursuant to USSG § 3B1.1(c) and whether the defendant should be held accountable for historical drug quantities described by the defendant in his post-arrest statement. For the reasons stated below, the Government respectfully submits that both of these questions should be answered in the affirmative.

1

**II.     DISCUSSION**

    A.     <u>Leadership Enhancement Pursuant to U.S.S.G. § 3B1.1(c)</u>

The defendant's challenge to the two-level leadership adjustment recommended by the probation office should be rejected. Evidence adduced at the sentencing hearing will show that the defendant set the time, place and conditions under which the defendant's co-conspirator was to sell cocaine base to the defendant's customer. The evidence will also show that the defendant was the source of the drugs and that he was to retain the majority share of profits from the sale of those drugs. See <u>United States v. Veilleux</u>, 949 F.2d 522, 524-25 (1st Cir. 1991).

    1.     Applicable Standard

Guideline Section 3B1.1 provides a sliding scale of enhancements for a defendant's aggravating role in an offense. See U.S.S.G. § 3B1.1, comment. (backg'd). It reads:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a)    If the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>
> (b)    If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.
>
> (c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S.S.G. §3B1.1.

Application Note 1 to U.S.S.G § 3B1.1 explains that the term "participant" means "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). Among the factors courts should consider are:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). See also United States v. Balogun, 989 F.2d 20, 23 (1st Cir. 1993). This list is representative, not exhaustive. See United States v. Tejada-Beltran, 50 F.3d 105, 111 (1st Cir. 1995). The background commentary explains that the adjustment was promulgated "primarily because of concerns about relative responsibility." USSG §3B1.1, comment. (backg'd). Defendants who exercise supervisory roles over others tend to gain larger profit and thus present a greater danger to the public and also a greater likelihood of recidivism. See id. The Sentencing Commission recognized that in smaller criminal enterprises, the distinctions between organizers and leaders may have less significance than in larger ventures, where lines of authority may be more clearly defined. See id. The blurring of those lines is "reflected in the inclusiveness of §3B1.1(c)." Id.

Application of §3B1.1(c) involves a two-part analysis. See Veilleux, 949 F.2d at 524. First, the sentencing court must find as a fact that at least two culpable participants were involved in the criminal enterprise. See id. Second, the evidence must show that defendant "'exercised control over, organized, or was otherwise responsible for superintending the activities of' at least one other participant in a criminal activity on at least one occasion." United States v. Jones, 523 F.3d 31, 42-43 (1st Cir. 2008)(internal citations omitted).

At sentencing, the burden is on the Government to prove by a preponderance of the evidence that the adjustment applies. See U.S. v. Arbour, 2009 WL 620254 * 2 (1st Cir. (Me.) March 12, 2009). However, the inquiry is necessarily "a fact-specific task" in which the

3

judgment of the district court is entitled to considerable deference.  See United States v. Laboy, 351 F.3d 578, 585 (1st Cir. 2003)(internal citations omitted).

        2.      Anticipated Evidence

The evidence adduced at the sentencing hearing in this matter will reflect that a leadership enhancement is appropriate.  First, the evidence will show that the defendant recruited his co-conspirator to participate in the charged conspiracy.  Second, the defendant arranged the drug deal that his co-conspirator was to participate in and approved the amount of drugs the co-conspirator was to deliver to the defendant's customer.  See Veilleux, 949 F.2d at 525.  Third, the defendant gave his co-conspirator instructions with respect to the time and place for the sale to occur.  See id.  Fourth, the defendant was to retain the majority of the profits from the drug sales, allocating only a small percentage to his co-conspirator for his/her willingness to deliver the drugs.  See Balogun, 989 F.2d at 23.  Given the defendant's directions to his co-conspirator as to how he/she was to complete the drug transaction, the nature of the defendant's participation in relation to his co-conspirator, and the defendant's claimed right to the lion's share of the proceeds from the transaction, the record will wholly support a leadership enhancement pursuant to U.S.S.G. § 3B1.1.

    B.    Drug Quantity

        1.      Applicable Standard

Under U.S.S.G. §1B1.3(a)(2), the quantity of drugs attributable to a defendant includes amounts "that were part of the same course of conduct . . . as the offense of conviction."  See United States v. Santos Batista, 239 F.3d 16, 20 (1st Cir. 2001).  Application Note 9(B) explains that other offenses are included in the same course of conduct "if they are sufficiently connected

or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Factors to consider "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.

Note 9 formalized the test for "same course of conduct" that had been developed by the Second and Ninth Circuits and adopted by several other circuits. See e.g., U.S. v. Maxwell, 34 F.3d 1006, 1010-11 (11th Cir. 1994) (aff'd in part, vacated in part and remanded: unrelated cocaine distribution that occurred a year earlier and involved different people than Dilaudid conspiracy and other cocaine distribution on which defendant was convicted did not meet test for similarity, regularity, and temporal proximity); U.S. v. Roederer, 11 F.3d 973, 977-80 (10th Cir. 1993) (affirmed: drug amounts from conspiracy that ended in 1987 were relevant conduct for 1992 cocaine distribution—evidence showed defendant distributed cocaine "from the 1980s through May, 1992, [and his] conduct was sufficiently similar and the instances of cocaine distribution were temporally proximate"); U.S. v. Lawrence, 915 F.2d 402, 406-08 (8th Cir. 1990) (quantities of cocaine that were not part of the offense of conviction—conspiracy to distribute marijuana—but were purchased and distributed during the course of that conspiracy and were part of a general pattern of drug distribution could be included in setting the offense level); U.S. v. Santiago, 906 F.2d 867, 872-73 (2d Cir. 1990) (drug sales occurring eight to fourteen months before drug sale that resulted in conviction were properly deemed part of same course of conduct—all sales were similar and to same individual).

The latter part of Note 9(B) was taken from a Ninth Circuit case that held that "the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity. . . . When one component is absent, however, courts must look for a stronger presence

of at least one of the other components." U.S. v. Hahn, 960 F.2d 903, 909-11 (9th Cir. 1992) (remanded to determine whether past drug sales meet test). See also U.S. v. Wall, 180 F.3d 641, 645-47 (5th Cir. 1999) (aff'd in part, vacated in part and remanded: although 1992 offense of conviction and dismissed 1996 and 1997 charges all involved bringing marijuana to U.S. from Mexico, "temporal distance between the offenses, the lack of regularity, and the weak similarity between the offense of conviction and the later offenses compel us to conclude that the later offenses cannot properly be considered as relevant conduct"); U.S. v. Jackson, 161 F.3d 24, 28-30 (D.C. Cir. 1998) (affirmed inclusion of four-year-old cocaine deal—although regularity and temporal proximity were lacking, inclusion was justified by "extreme similarity" of deals and fact that lapse of time was partly caused by imprisonment of key participant); U.S. v. Robins, 978 F.2d 881, 890 (5th Cir. 1992) (affirmed: marijuana distributions prior to eighteen-month hiatus were still part of same course of conduct or common scheme or plan as subsequent distributions); U.S. v. Nunez, 958 F.2d 196, 198-99 (7th Cir. 1992) (affirmed: uncharged 1986-1988 and 1990 cocaine sales for defendant arrested in Oct. 1990 "amounted to the same course of conduct"—all sales made to same buyer and sole interruption was buyer's imprisonment); Cf. U.S. v. Hill, 79 F.3d 1477, 1480-85 (6th Cir. 1996) (error to include crack from 1991 charge at sentencing for crack and powder cocaine offense committed nineteen months later—temporal proximity was "extremely weak," regularity was "completely absent," and there was too little similarity to meet relevant conduct test); U.S. v. Fermin, 32 F.3d 674, 681 (2d Cir. 1994) (aff'd in part, vacated in part and remanded: drug quantities from 1983-1985 drug records could not be used as relevant conduct in 1990-1991 conspiracy offense—government failed to show high degree of similarity or regularity required where temporal proximity is lacking); U.S. v.

<u>Montoya</u>, 952 F.2d 226, 229 (8th Cir. 1991) (reversed: later attempt to purchase marijuana was not part of "same course of conduct" as conviction for conspiracy to distribute cocaine—only common element was presence of defendant).

      2.      Anticipated Evidence

Following his arrest, the defendant provided a statement to law enforcement. This statement was reduced to writing by the interviewing agent and reads as follows:

> I, Rannick Williams, attended high school through the tenth grade in Brooklyn NY. I can read and write the English language, but not very well. I started coming to Maine around 1996.... On 10/22/2007 I brought a black back pack containing a quantity of cocaine base to 81 Marb[le] St. in Lewiston, Maine. This cocaine was contained in a plastic zip lock bag. Since 1996 I have transported cocaine base from NY to Maine between 10 to 15 times. Two of these trips I transported 4 ounces of cocaine base to Maine. The other trips consisted of 2 to 3 ounces of cocaine base. I always transported cocaine base during these trips.
>
> I typically establish my distribution operation in Lewiston, Maine. I have two drug runners that assist me with distribution and four customers. I do not wish to name them now.
>
> I charge $50.00 for ½ gram of cocaine base; $100.00 for 1 gram; $175.00 for 3.5 grams; $650.00 for ½ ounce; and $1150.00 for one ounce. I came to Maine about three weeks ago with 4 ounces. The cocaine base that agents found in the black bag at 81 Marb[le] Street was mine and the remainder of my four ounces.

The drug trafficking activities the defendant confessed to engaging in are part of the same course of conduct as the charged offenses. Specifically, the offenses of conviction involve crack cocaine that the defendant brought to Maine from New York for sale and distribution. Likewise, the defendant's previous trips to Maine – as he described them – involved the same drug being brought from the same place for the same purpose and being sold at similar prices. In addition, the defendant's historical use of "drug runners" – as he described it – also mirrors the circumstances underlying the charged offenses. While the defendant may have been

intermittently incarcerated for extended periods of time between his trips to Maine to sell crack cocaine, this alone should not preclude the inclusion of the defendant's past conduct in his drug quantity calculus.  See U.S. v. Nunez, 958 F.2d at 198-99; U.S. v. Jackson, 161 F.3d at 30.

## CONCLUSION

For the above-stated reasons, the Government respectfully requests that (1) the defendant receive a 2 level leadership enhancement for his role in the charged conspiracy; and (2) the defendant's drug trafficking activities described in his post-arrest statement be included in the computation of his base offense level as conduct constituting the same course of conduct as the charged offenses.

    Respectfully submitted,
    PAULA D. SILSBY
    United States Attorney

    /s/Michael J. Conley
    Michael J. Conley
    Assistant U.S. Attorney
    U.S. Attorney's Office

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing Sentencing Memorandum with the Court using the ECF system which will send a copy to:

Thomas Marjerison, Esq.
tmarjerison@nhdlaw.com

/s/Michael J. Conley
Michael J. Conley
Assistant U.S. Attorney